(Pleito No. 15.—Fallado el 30 de Diciembre de 1899.)

## Valdés contra Valle y Noble.

Recurso interpuesto contra sentencia dictada por la extinguida Sección 2ª de la Corte Suprema.

1.—Recurso. Cuando el valor de un derecho real no consta en ningún documento, y se ha admitido por las partes que no excede de cuatrocientos dollars, el Tribunal no asumirá que dicha cantidad es menor que la indicada, y estimará el recurso.

2.—Contrato. Un contrato existe desde el momento en que las partes consienten en obligarse; desde entonces nace la obligación entre ellas con respecto á todo aquello que según su naturaleza, está de acuerdo con la buena fe, con la costumbre y con la ley.

3.—Servidumbre. Las servidumbres se establecen por la ley ó por la voluntad de los propietarios. La obligación en que se constituye una servidumbre debe cumplirse aunque no aparezca en el contrato la cantidad ó precio determinantemente.

4.—Dolo. El dolo no debe presumirse sino que ha de ser probado afirmativamente.

5.—Conocimiento. Un individuo que tiene conocimiento personal de la existencia de un derecho real y de un gravamen que pesa sobre un inmueble, no puede alegar en modo alguno en la demanda, que aquel derecho y ese gravamen no fueron inscritos según la ley lo tiene ordenado.

6.—Acción para recobrar la propiedad de un inmueble. Cuando se establece una acción para recobrar la propiedad ó algún derecho en un inmueble con título preexistente, no es necesario ejercitar esta acción con objeto de anular concesiones subsiguientes anteriores á ella.

7.—Intervención de terceros. Las personas que no son consideradas como partes pero que pueden reputarse como terceros, se dividen en dos clases, á saber: terceros según el derecho civil y terceros según la Ley Hipotecaria. Cuando un contrato no ha sido objeto de título alguno inscrito, entonces rige el derecho civil, pero si existe acto ó contrato inscrito entonces han de someterse á la Ley Hipotecaria.

8.—Propiedad de inmuebles. Cuando una finca ha sido vendida á diferentes personas la propiedad se investirá en aquél que antes la haya inscrito en

el Registro. Si no ha habido inscripción alguna, dicha propiedad pasará á aquél que entre primero en la posesión; y si no ha habido posesión irá entonces á quien tenga el título de fecha más antigua.

## SENTENCIA.

En San Juan de Puerto Rico, á treinta de Diciembre de mil ochocientos noventa y nueve, en los autos que ante este Supremo Tribunal penden en virtud de recurso de casación por infracción de ley, seguidos en el suprimido Juzgado de 1ª Instancia de Caguas y en la Sección 2ª de la extinguida Corte Suprema de Justicia, por Don Ramón Valdés Cobián, propietario y vecino de Bayamón, bajo la representación y dirección del Letrado Don Hilario Cuevillas Hernández, con Don Pedro del Valle Franco, agricultor y vecino de Comerío, representado y dirigido por el Letrado Don Juan Hernández López, y con Don Guillermo David Noble y Ruiz, propietario y vecino de esta Ciudad, llevando su representación y Dirección el Letrado Don Rafael López Landrón, sobre reconocimiento de servidumbre y otorgamiento de escrituras.—Resultando : Que Don Pedro del Valle y Franco, en seis de Octubre de mil ochocientos noventa y ocho, otorgó en el pueblo de Bayamón ante el Notario Don Tomás Valldejuly y Calatraveño, escritura pública, en la que después de exponer que en la jurisdicción de Comerío posee una finca rústica, de la cual tiene título inscrito, que no presenta en ese acto por haberlo dejado olvidado en su casa, reservándose hacerlo cuando sea necesario y se le exija por el otro compareciente Don Ramón Valdés Cobián, terrenos que están situados en las riberas derecha é izquierda del río de la "Plata," en la parte conocida con el nombre del "Salto," y tienen por colindantes los propietarios que se indican en el croquis que deja copiado al final de la presente escritura (así dice), en el cual se señala el curso y curvas que lleva y tiene en dicha parte el referido río, y que habiéndole hecho Valdés proposiciones que considera beneficiosas, para que le consienta y autorice á ejecutar dentro de sus terrenos cuantas obras sean

necesarias para aprovechar dicho Valdés la fuerza de agua
del indicado río, y queriendo consten las que mutuamente
se han hecho en forma solemne y legal, otorgan las siguientes
estipulaciones:—1ª  Don Pedro del Valle da permiso y
concede la autorización más amplia á Don Ramón Valdés
y Cobián, para que solicite el aprovechamiento de las aguas
que corren por el río de la "Plata," y para que dentro de los
terrenos de Valle señalados en el croquis adjunto, que
comprende ambas riberas de aquél, ejecute cuantas obras
considere necesarias, sin limitación alguna, hasta llevar
á cabo las que tiene en proyecto ó puede tener el Sr. Valdés,
sean unas ú otras de cualesquiera clases: permiso y autoriza-
ción que concede por tiempo ilimitado, el que respetarán sus
sucesores; obligándose á no realizar otro compromiso igual ó
parecido con ningunas otras personas ni sociedades;—2º Don
Ramón Valdés queda obligado á construir un camino al lado
izquierdo del río de la "Plata," que enlace por la carretera
que ha de unir el pueblo de Bayamón con el de Comerío,
calculándole un valor de doscientos pesos;—3º  Valle queda
obligado á vender á Valdés la parte de terreno de ambas
riberas, en las que se enclaven las obras que ejecute, dándole
salida para comunicar con dicha carretera, y quedando com-
prometido además Valle á no ceder, ni vender dichos terrenos
á otras personas ni sociedades sin consentimiento de Valdés;
y 4º  Ambos otorgantes aceptan en todas sus partes el
contrato, ofreciendo Valle cumplirlo, anulando todo cuanto
pudiera realizarse anterior ó posteriormente, y á no disminuir
en lo más mínimo la concesión hecha á Valdés.—Resultando:
Que Eduvigis Nieves, Jesús María Rivera, Pedro del Valle,
firmando á su ruego Cirino Pumarada, Dionisio Morales, por
quien firmó también á su ruego Maximino Franco, otorgaron
en Puerto Rico á veinte y cinco de Septiembre de mil ocho-
cientos noventa y ocho, el documento privado que dice:
" Los que suscriben, propietarios de los terrenos colindantes
del río de la "Plata," en la jurisdicción de Comerío, barrio
de Doña Elena y Cedrito, autorizamos á Don Eduardo Gon-

zález y Rodríguez á practicar todos los extremos necesarios para la instalación de una toma de agua en dicho río, en el sitio denominado el "Salto," y ejecutar todas las obras necesarias para el aprovechamiento de dichas aguas en el punto mencionado, y en la forma que dicho Sr. determine, declarando al mismo tiempo que Don Eduardo González Rodríguez es la primera persona á quien han autorizado formalmente, según prescribe la ley, para los fines arriba mencionados;" y en cinco de Noviembre en Bayamón, Barrio-nuevo, Pedro del Valle y Dionisio Morales, firmando á ruego de ellos los antes expresados Pumarada y Franco, y como testigos W. Benet, A. L. Arpin, Eusile Don Senil y Alfredo García, hacen constar en otro documento privado la autorización y concesión antes expresada á González; y que en seis de Octubre del mismo año, ante el Notario de Bayamón, creyendo que se trataba de la misma persona del Sr. González, otorgaron escritura comprometiéndose con Don Ramón Valdés, á que hiciera uso de los derechos ribereños á ellos correspondientes, advirtiéndole que tenían ya igual compromiso con González, representante verbal de W. D. Noble, y manifestándole Valdés que era la misma concesión ya hecha, fué por ese engaño que hicieron el segundo compromiso, y en vista de ese error, dejan sin efecto el hecho con Valdés, devolviéndole las cantidades que figuran en el compromiso, las que son cinco y dos pesos; observándose en este documento, y firmada por el Notario Valldejuly la siguiente nota : "He visto y he presenciado poner todas " las firmas que anteceden, doy fe."—Resultando: Que Pedro del Valle, firmando á su ruego Ventura Ortiz, y como testigos Jesús María Rivera y Don Antonio Géigel, en primero de Noviembre de mil ochocientos noventa y ocho, dice en otro documento privado que vende y traspasa á W. D. Noble dos zonas de terreno de cien pies de ancho en la ribera del río de la "Plata," y en toda su longitud en terrenos de su propiedad, según se describe en las escrituras que tiene en su poder, siendo el precio de la venta veinte y

cinco pesos recibidos y trescientos setenta y cinco que le
serían entregados dentro de sesenta días contados desde la
fecha, y que ante el Notario de esta Ciudad Don Mauricio
Guerra, otorgó en nueve de dicho mes y año escritura de venta
á Noble de la posesión de dos parcelas de terreno, una en
el barrio de Cedrito, de Sabana del Palmar, de tres cuerdas
que segrega de las veinte que describe, y hubo diez y
siete por compra á Juan Pablo Soto y las tres restantes
de Pilar del Valle, según expediente posesorio tramitado en
mil ochocientos noventa, y que fué inscrito en el Registro de
la Propiedad de Caguas, al folio 76 vuelto del libro provi-
sional, inscripción 1ª; colindando esa parcela segregada por
el Este y Sur con el vendedor; por el Norte Dionisio
Morales y por el Oeste el río de la "Plata;" y la otra parcela
en el barrio de "Santa Elena," de setenta y cinco centavos
de cuerda, colindante al Oeste con los demás terrenos de
Valle, al Norte con Eduvigis Nieves, al Sur con Jesús María
Rivera y al Este con el río de la "Plata," cuyo terreno, que
segrega de otro predio de siete cuerdas veinte céntimos,
de extensión, que hubo por compra á Francisco Rivera
y José Camilo Resto, y careciendo de título escrito de
esa adquisición, ofreció promover expediente posesorio, auto-
rizando al comprador para promoverlo, confesando haber
recibido trescientos pesos como precio de lo vendido, y
traspasando las parcelas en la propia forma que hasta la
fecha de la escritura las ha venido poseyendo y libres
de toda carga y gravamen.—Resultando: Que Don Ramón
Valdés Cobián dedujo demanda en cinco de Diciembre
de mil ochocientos noventa y ocho, acompañando la escritura
referida en el primer resultando, haciendo mérito de su
contenido y de haber solicitado del Gobierno la concesión
para aprovechar las aguas del llamado "Salto" del río de la
"Plata," jurisdicción de Comerío, para producir fuerza
eléctrica, según la *Gaceta* que presentó, añadiendo que para
el establecimiento de máquinas, almacenes y accesorios,
adquirió la propiedad de terrenos en la margen izquierda del

río, pertenecientes á Nieves y á Ramos, y la concesión y autorización de Pedro del Valle para conducir las aguas por un canal en sus terrenos y ejecutar cuantas obras considerara necesarias, sin limitación alguna, con lo demás que expresa su escritura de que antes se deja hecha referencia, la que llevada al Registro de la propiedad para inscribir la servidumbre de acueducto que de ella aparece, no pudo conseguirse, por no describirse la finca en sus cuatro puntos cardinales, no citarse folio y número de la inscripción á favor de Valle, ni decidirse el valor y procedencia de la finca; que negándose Valle á corregir esos defectos, por acta adicional, sin dar explicaciones de su negativa, las encontró al saber que W. D. Noble y Valle habían concertado la compra del terreno, requiriendo aquél al Notario de Bayamón para otorgar la escritura, y como pretendiera omitir en ella el gravamen á favor del demandante, á lo que el Notario se negó, fueron á extender la escritura ante otro Notario, que careciendo de antecedentes, pudo concretarse á poner los hechos que le relataban: que después Noble se opuso á la petición de Valdés sobre aprovechamiento de aguas del "Salto," fundándose en ser dueño del terreno comprado á Valle, y aunque no se dice en la escritura el valor estimable de la servidumbre, hace constar, que el pedacito de terreno de Valle no llega ni con mucho á mil pesos, ni excede de esa cantidad el trozo del canal que en él ha de construirse; exponiendo como fundamentos de derecho que las obligaciones voluntarias deben cumplirse, é impuesta por Valle una servidumbre aparente y continua de acueducto, está obligado á practicar las diligencias necesarias para que sea inscrita en el Registro de la Propiedad á fin de afianzar ese derecho; que quien vende ó compra como libre una cosa, sabiendo que está gravada, comete un delito de estafa alegándose esto para mayor demostración de su derecho, y reservándose utilizar la acción criminal cuando lo estime conveniente; que al adquirir Noble la finca de Valle lo hizo con el gravamen de que tenía noticia cierta, porque los derechos

reales se trasmiten con la cosa y perduran hasta su extinción legal; debiendo tramitarse su reclamación en juicio de menor cuantía, por no exceder de siete mil quinientas pesetas el valor litigioso, y ejercitando la acción que le compete, concluye solicitando se cite á Pedro del Valle y á W. D. Noble y se les condene á presentar en el Registro de la Propiedad de Caguas las escrituras de propiedad del terreno expresado y otorguen la necesaria para corregir los defectos que impiden inscribir el derecho real de la servidumbre, haciéndolo el Juzgado en defecto de ellos, si se negaren, con costas daños y perjuicios.—Resultando: Que conferido traslado á los demandados y accediéndose á la anotación preventiva de la demanda, por otrosí solicitada, negada por el Registrador en trece de Diciembre de mil ochocientos noventa y ocho, contestó Don Pedro del Valle la demanda, solicitando se le absolviera de ella con las costas al actor, exponiendo la autorización que concediera á Noble por mediación de Don Eduardo González, que refiere el documento de veinte y cinto de Septiembre de mil ochocientos noventa y ocho, consignada en el segundo resultando; que enterado Valdés de ese pacto se propuso burlarla, aparentando obrar de común acuerdo con Noble y González, diciéndole que lo que á él le otorgara era para aquéllos, y en esas condiciones no tuvo inconveniente en concurrir ante el Notario de Bayamón en seis de Octubre, y consignar en escritura pública la autorización á Valdés, en la forma que expresa la escritura; pero habiendo prestado ese consentimiento por error y engañado por Valdés, en nueve de Noviembre de mil ochocientos noventa y ocho, vendió á Noble las dos zonas de terreno antes deslindadas, al enterarse de que no obraban de acuerdo Valdés y Noble, según se expresa en la relacionada en el tercer resultando; que por esas causas decidió anular el contrato con Valdés y devolverle las arras, que se negó á recibir; no prestándose á un nuevo contrato para determinar el objeto y especie, por dicha nulidad, estar rotos los vínculos de derecho del pacto con Valdés, y carecer de objeto deter-

minado; que esas mismas causas le impidieron inscribir en
el Registro la repetida escritura de seis de Octubre, y por no
describirse la finca por sus cuatro puntos cardinales, ni
decirse su valor y procedencia, alegando como fundamentos
legales los artículos 1,261, 1,265, 1,266, 1,269, 1,273 y 1,454
del Código Civil y la sentencia del Supremo de veinte y cinco
de Junio de mil ochocientos setenta y ocho.—Resultando:
Que la contestación de Noble se funda en los documentos priva-
dos que acompaña relacionados en el 2º y 3er resultandos,
á que se contrae en el 1º, 9º y 10º hechos, exponiendo ade-
más que el veinte y cinco de Septiembre del noventa y ocho,
Don Antonio Géigel y Sabat recibió el encargo verbal de
Don Eduardo González y Don Guillermo Noble, de avistarse
con los dueños ribereños colindantes al sitio del "Salto"
del río de la "Plata," y obtener de ellos la autorización para
las obras necesarias de aprovechamiento de las aguas, y prac-
ticar todos los estudios precisos á la instalación de una toma
en el mismo sitio del río, lo que consiguió por el documento
número 1º, que expresa era la primera autorización para
aprovechamiento, reproduciendo lo que Valle dice fué causa
del contrato de éste con Valdés; que ese contrato celebrado
con Valdés en seis de Octubre envuelve una expropiación de
hecho, porque puede ocupar parte ó toda su propiedad, no
dando en cambio á Valle más que su agradecimiento y la
construcción de un camino que éste no necesita y sí Valdés;
y que tal contrato no es venta, ni servidumbre, ni escritura
pública, sino promesa de venta, posterior á otra anterior-
mente otorgada á tercero; demostrando no ser escritura el
croquis ó serie de líneas trazadas por el Notario, lo que hizo
imposible su inscripción en el Registro de la Propiedad, por
no admitirse la de obligaciones privadas meramente perso-
nales, convirtiéndolas en compra-venta de terrenos ó de
servidumbre, sin mediar precio; que si bien Valdés instó de
nuevo á Valle para que le otorgara nuevo documento, se
negó á ello por indicación de Noble de que nada tenía que
ver la promesa de seis de Octubre con la otorgada á Gon-

zález, convencido de haber otorgado una segunda promesa contradictoria y nula, faltando á la primera; que entonces ó sea á mediados de Octubre, fundado en lap romesa de Valle, solicitó del Gobierno la concesión de aguas del "Salto;" que la venta que le hizo Valle por el documento número 2º y que formalizó por la escritura de nueve de Noviembre del referido año, la hizo libre de toda carga real, hallándose ese documento pendiente de inscripción en el Registro de Caguas, por lo que no puede presentarla; mas á los fines del artículo 503 de la Ley procesal, designa la oficina donde se encuentra, haciendo constar que desde el cinco de Noviembre está en posesión quieta y pacíficamente de esos terrenos, sin carga ni servidumbre; recomendando como fundamentos legales los artículos 1,223, 1,225, 1,257 y 1,473 del Código Civil, por ser defectuosa la escritura, no perjudicar ningún contrato privado ó tercero, ni producir efectos las convenciones sino entre los que las otorgan y sus herederos: mientras que los títulos inscritos, tienen eficacia aún contra acreedores singularmente privilegiados. é invocando asimismo los artículos 2º, 3º 23, 24 y 27 de la Ley Hipotecaria, por no ser inscribibles los contratos privados, ni perjudican al tercero que tiene derecho inscrito, termina suplicando se declare sin lugar la demanda con las costas.—Resultando: Que recibido á prueba el pleito y practicadas las pruebas por las partes, vino á instancia de Valdés la certificación del Registro de la Propiedad de Caguas que contiene: 1º que á favor de Don Pedro del Valle no existe ninguna inscripción de dominio sobre los terrenos sitos en los barrios Cedrito y Doña Elena, término municipal de Comerío; 2º que del examen practicado del Registro aparece que Don Pedro del Valle, por escritura de nueve de Noviembre del expresado año, vendió á Don Guillermo David Noble y Ruiz la posesión de un predio rústico, de cuya inscripción no puede certificarse por haberse practicado en un libro provisional, y no estar trasladada al talonario; y 3º que no se tomó anotación de la demanda de Don Ramón Valdés, contra Don Pedro del Valle y Don Gui-

llermo David Noble y Ruiz, sobre otorgamiento de escritura,
de constitución de servidumbre, por no describirse la finca en
que debía tomarse dicha anotación, porque si bien Valle
tenía dos predios inscritos á su favor, y Noble figuraba con
una anotación preventiva por suspensión de inscripción de
venta de una rústica, no puede venirse en conocimiento de
que esas fincas fueran las que debían gravarse con la anota-
ción; defectos estimados como insubsanables; y á instancia
de Noble, solicitando que dicho Registrador certificara en
relación los asientos de la inscripción 1ª del tomo primero
provisional de Comerío, folio 53 vuelto y 54, de la escritura
pública de nueve de Noviembre de mil ochocientos noventa
y ocho, por la que Don Pedro del Valle vende á Don Gui-
llermo Noble, libre de toda carga, los terrenos ribereños y
contiguos á una y otra orilla del sitio denominado "Salto",
del río de la Plata, jurisdicción de Comerío, barrio de Doña
Elena y Cedrito, certificando asimismo que esos terrenos
están libres de toda servidumbre y gravamen, contestó el
Registrador no poder certificar según lo dispuesto en el
artículo 84 del Reglamento para la ejecución de la Ley
Hipotecaria.—Resultando: Que se agregaron como prueba
del demandante: 1º Una certificación pedida á la Secretaría
de Fomento de esta Isla, creditiva de que Don Ramón Val-
dés en tres de Octubre de mil ochocientos noventa y ocho
solicitó la derivación de aguas del río de la "Plata" sitio de-
nominado el "Salto", publicando en la *Gaceta* del diez y
ocho, dándose treinta días de plazo para reclamar los per-
judicados, elevándose el expediente á la Superioridad en
primero de Abril del noventa y nueve; y otra que antes del
tres de Octubre del noventa y ocho, no se había registrado
ninguna petición semejante, firmada por Don Guillermo
David Noble, quien y Don Luis Arpín presentaron escritura
solicitando dichas aguas en el mencionado sitio en diez y seis
de Marzo de mil ochocientos noventa y nueve; 2º Una cer-
tificación del Notario Valldejuly, de Bayamón, creditiva de
haber otorgado cuatro escrituras á favor de Valdés de conce-

siones y autorizaciones, como la de seis de Octubre de mil
ochocientos noventa y ocho, y dos de venta de predios rús-
ticos en la misma ribera; que los requerimientos fueron, el
primero por Valdés para ir al "Salto", saliendo acompañados
de Valdés, Noble y otros el tres de Noviembre, otorgando dos
escrituras; y por requerimiento de Noble y Arpín el seis de
Noviembre, antorizando el siete la venta á favor de Noble
por Hilario Torres, llegando ese día á extender la escritura
de venta del Don Pedro del Valle á Noble de un trozo de
terreno en la ribera del "Plata", sitio del "Salto", en la que
advirtió á los otorgantes que en seis de Octubre de mil ocho-
cientos noventa y ocho Valle había otorgado á Valdés la es-
critura de esa fecha, y al proceder á la lectura de dicha es-
critura de venta, Noble manifestó no podía suscribirla si no
hacía desaparecer el Notario la indicada advertencia, que-
dando sin firmar ni autorizar; 3º Copia de la escritura de
venta de Valle á Noble, referida en el tercer resultando, la
que también fué llevada al cuaderno de prueba por el Noble,
expedidas las copias por el Notario autorizante Don Mau-
ricio Guerra; 4º Reconocimiento por Noble de las firmas
puestas al pie del documento privado por él y Valdés, otor-
gado en Bayamón á cuatro de Noviembre de mil ochocientos
noventa y ocho, que dice: "Los que suscriben celebran el
presente contrato que quieren tenga todo el valor y fuerza
que si fuese por ante Notario Público, bajo las bases siguien-
tes: 1ª Don Ramón Valdés tiene hecho un contrato público
sobre terrenos para establecer las obras de aprovechamiento
de aguas en el río "Plata", con Don Pedro del Valle y Don
Dionisio Morales.—2ª Don W. D. Noble tiene hecho otro
contrato privado con los mismos Sres. para el mismo objeto.
—3ª Ambos Sres. se comprometen por este documento á no
rectificar ni variar ni el Sr. Valdés el suyo, con la prioridad
que tiene ni el Sr. Noble el suyo de fecha posterior.—Quedan
obligados al cumplimiento de este contrato, que se firma por
duplicado, dentro del plazo de veinte y cuatro horas que podrá
ser ampliable á voluntad de ambos contratantes, y consideran

nulo todo cuanto se haga fuera de lo que aquí establecemos.
—Bayamón, cuatro de Noviembre á las seis de su tarde
del año de mil ochocientos noventa y ocho.—W. D.
Noble.—R. Valdés Cobián."—Siendo reconocidas por Noble
como legítimas, añadiendo quedó sin efecto como nulo,
por haber transcurrido las veinte y cuatro horas estipu-
ladas de espera recíproca para llegar á un acuerdo, siendo
posible, y dejando á salvo el error de derecho que contiene
de considerar documento público el documento otorgado
sugestivamente por Don Pedro del Valle á favor de Don
Ramón Valdés Cobián ante el Notario Valldejuly por no ser
más que un documento privado; 5º Las declaraciones de los
testigos Don Cruz Castro, Don José María Placer, Don Félix
Pérez Rivera y Don Cirino Pumarada, manifestando que
Valdés hacía tiempo iba al "Salto" con objeto de establecer
una represa y toma de aguas; los tres primeros y el Notario
Valldejuly, que ni en los preliminares del negocio, ni en el
acto de la escritura á favor de Valdés, dió á entender Valle
había hecho igual concesión á otras personas para ejecutar
las mismas obras á aquél concedidas, agregando Placer y
Pérez que Valle fué quien los enteró el seis de Octubre de
la concesión á Valdés, y les rogó fueran sus testigos; no
constando á Castro nada de los preliminares, pero sí del acto
de la escritura, en que nada manifestó Valle de otra conce-
sión; Pérez, Don Félix, y su hermano Don Celestino, expre-
san que sabedores por otras personas que habían maleado á
Valle haciéndole ofertas, lo llamaron y aconsejaron cum-
pliera sus compromisos, no consiguiendo Castro, Antonio
Salgado y Evaristo Martínez que Valle respetara el compro-
miso con Valdés, afirmándolo además Valldejuly, y Puma-
rada que tuvo conocimiento por estar todos hospedados en su
casa y presenciar que Valle eludía con fútiles pretextos
hacer la escritura que le exigía Valdés, porque ya estaba allí
Noble trabajando con Valle y otros ribereños para que se
comprometiesen con él y eludieran sus compromisos con
aquél, agregando que para evitar cuestiones, el tres de No-

viembre indicó Noble y aceptó Valdés suspenderlo todo y reunirse con Mr. Arpín en la Capital, de quien era emisario Noble, en todo este negocio, para venir á un acuerdo, y así lo hicieron, regresando todos á Bayamón; afirmando este extremo Valldejuly; y declarando Don Tulio Larrínaga y Don Antonio Géigel, que se reunieron el cinco de dicho mes en esta Ciudad por la mañana con el Letrado López Landrón, Don Guillermo D. Noble, Arpín y Valdés, y no hubo acuerdo entre los dos últimos, porque pretendía le diera Valdés una mitad de la participación en la empresa y éste se negó por considerarla excesiva, agregando que todo lo había hecho él. —Resultando: Que se agregaron como pruebas del demandado Valle las declaraciones de Jesús María Rivera y Dionisio Morales, manifestando que al hacer Valdés á Valle las proposiciones de aprovechamiento de aguas para que le autorizó éste, le contestó que ya tenía trato con Don Eduardo González para Noble, replicando Valdés era igual porque obraban de acuerdo en el asunto, y lo que se quería era elevar á escritura pública el convenio que Valle celebró con González, manifestando éste que siendo así estaba á sus órdenes, como á la de los otros, conviniendo ambos concurrir á Bayamón á otorgar la escritura, creyendo Valle obraba Valdés de buena fe en nombre de Noble y González; y que al saber, transcurridos algunos días, que le había engañado Valdés, se avistó Valle con él para dejar nulo el contrato de seis de Octubre por el engaño, devolviéndole las arras, negándose Valdés á recibirlas; constándole á Eduvigis Nieves tan sólo, que Valle cedió á Valdés un pedazo de terreno en la margen del río de la "Plata" para los trabajos que pensaba hacer: y Pumarada que sólo sabe ha tenido Valle tratos con Valdés y con Noble, sin constarse la clase, pero Valdés y Valle tuvieron una conversación, autorizando éste á aquél á hacer lo que quisiere en sus terrenos, ofreciéndole Valdés un camino, recordando, además, haber firmado á nombre de Valle un compromiso que hizo con Don Antonio Géigel que se relacionaba con asuntos del "Salto".—Resul-

tando que de las pruebas del cuaderno de Noble aparecen:
1.º la declaración del Notario Don Tomás Valldejuly, mani-
festando que su intervención en el documento número tres,
referido en el segundo resultando, se concretó á legitimar
las firmas en él puestas; 2.º la ratificación, afirmación y
declaración de ser cierto el contenido del documento número
tres, por Dionisio Morales, Arpin, Benet y el demandado
Valle; 3.º la del número primero del segundo resultando
por Jesús M.ª Rivera, Dionisio Morales y el citado Valle,
quien absolviendo posiciones dice: que la primera autori-
zación para ejecutar obras de aprovechamiento de sus
terrenos sitio del "Salto" la concedió á González repre-
sentante de Noble; que la segunda á Valdés en seis de
Octubre, lo fué creyendo era la misma hecha á Noble, por
habérselo hecho entender Valdés; y que el primer contrato de
venta de su propiedad contigua al "Salto," ha sido á Noble;
4.º Don Antonio Géigel y Don Eduardo González Rodríguez
expresan es cierto el primer punto de hecho de la contes-
tación á la demanda, ó sea que el primero en veinte y cinco de
Septiembre recibió recado verbal de Don Eduardo González
y Noble para avistarse con los dueños ribereños del "Salto,"
río de la "Plata," barrios Doña Elena y Cedrito, jurisdicción
de Comerío, y obtener autorización para las obras de apro-
vechamiento de aguas, practicar estudios precisos á la
instalación, otorgándose en ese día el documento número
1.º, concediendo la autorización á González, en el que se hizo
constar era la primera otorgada á los fines de dicho aprove-
chamiento. — Resultando: Que dictada sentencia por el
Juez de 1.ª Instancia absolviendo á los demandados de la
demanda, imponiendo á Valdés las costas causadas por
Noble en el juicio, sin que los resultandos contengan el
resumen de las declaraciones de los testigos para ser apre-
ciadas todas las pruebas en conjunto, interpuso contra ella
Don Ramón Valdés recurso de apelación, y sustanciada la
alzada, la Sección 2.ª de la extinguida Corte Suprema de
Justicia, por sentencia de cuatro de Agosto último, confirmó

con costas de ambas instancias la del inferior.—Resultando: Que Don Ramón Valdés interpuso recurso de casación por infracción de Ley y doctrina legal, fundado en el caso 1º del artículo 1,690 de la Ley de Enjuiciamiento Civil, y en el artículo 79 de la Orden General número 118, ésta por haberse apreciado con error las pruebas de una y otra parte, y aquél por contener violación é interpretación errónea, y aplicación indebida de leyes y doctrinas legales aplicables, conceptuando infringidos: 1º, los artículos 1,088, 1,091, 1,097, párrafo 1º del 1,098 del Código Civil, por no conceder al contrato Valdés–Valle y á las obligaciones de él derivadas, fuerza ni consecuencias.—2º Los 1,254, 1,256, 1,258, 1,261, 1,271, 1,272 y 73 del mismo Código, porque la sentencia no acepta la naturaleza de este contrato, sus consecuencias, fuerza, la manera de formarse, la realidad de la existencia de los requisitos del 1261, ni considera los casos que pueden ser objeto de los contratos.—3º Los artículos 65, párrafos 1º, 2º, 3º y 4º del 66 en toda su extensión, de la Ley Hipotecaria, que definen los defectos subsanables, la forma y efecto de recurrir contra las calificaciones de los Registradores, los defectos insubsanables, y forma de contender los interesados por sus derechos ante los Tribunales. —4º, Los artículos 36, 37, párrafo 2º en sus tres apartados, el 38, párrafo 6º, 39, 41, párrafo 3º de la misma Ley, que definen las acciones rescisorias y sus causas y modo de probarlas.—5º Los artículos 1,225 y 1,227 del Código Civil, por reconocer los efectos de los documentos privados entre las partes desde su fecha, y contra tercero desde su registro público, y al apreciar la Sala sentenciadora la escritura, no le concede fuerza de documento privado con fecha indubitada contra todo documento de Noble.—6º Los artículos 1,278, 1,279, párrafo 1º y el final del 1,280 del citado Código, por definir la eficacia de los contratos, sea cualquiera la forma que los revista; los documentos en que deben hacerse constar los actos y contratos que traten de derechos reales sobre inmuebles, y las obligaciones corres-

pondientes á los contratos para otorgar los documentos.— 7? Los artículos 1,216, 1,218 y 1,223 del Código Civil que declaran la fuerza de los documentos públicos y su prueba, y lo que se entiende por escritura defectuosa.—8? Las doctrinas legales: 1? Nadie puede ir contra sus propios actos, y las sentencias permiten lo hagan Valle-Noble, después de reconocer éstos la prioridad del contrato Valdés, y la escritura y concesiones hechas por Valle á Valdés.—2? Nadie puede dar á otro lo que no tiene, y la sentencia permite que Valle se desatienda del contrato Valdés y conceda á Noble lo que no era suyo.—3? No cabe realizar otro contrato sin obtener la nulidad del primero, y apareciendo que Noble conocía el contrato con Valdés, antes de haber verificado el suyo, la sentencia da valor al contrato Valle-Noble.— 4? No cabe imponer costas sino cuando es notoria la temeridad, y ésta no existe en Valdés que sólo ha pretendido defender su derecho.—5? Toda persona puede obligarse como quiera, y queda obligada.—9? La apreciación errónea versa sobre todas las pruebas presentadas por una y otra parte para justificar los hechos respectivos. y los de la demanda resultan bien probados, y al afirmar lo contrario la sentencia por mala apreciación, incurre en la infracción materia de este recurso.—Resultando: Que tramitado el recurso los recurridos lo impugnaron, alegando Valle ser improcedente, atendida la índole y cuantía del litigio; y señalada la vista sostuvieron las partes sus respectivas pretensiones.—Visto: siendo Ponente el Juez Asociado Don Juan Morera Martínez.— Considerando: Que no constando el valor de la servidumbre de acueducto, de cuyo derecho real nace la acción del demandante, hoy recurrente, ni apareciendo de los documentos y demás resultancias de autos que el valor de lo litigioso sea menor de cuatrocientos dollars, circunstancia precisa para determinar la incompetencia.de este Tribunal, pues sólo se ha indicado por el actor y admitido por las partes, que no excede de siete mil quinientas pesetas, no es posible desestimar el recurso por falta de competencia, según

los artículos 26 y 78 de la Orden General número 118, y los
491 á 494, 685 y en especial el número 5º del 458 de la Ley
de Enjuiciamiento Civil.—Considerando : Que el contrato
existe desde que una ó varias personas consienten en obli-
garse respecto de otra ú otras, á dar alguna cosa ó prestar al-
gún servicio, y que se perfecciona por el mero consentimiento,
obligando desde ese instante, no sólo al cumplimiento de
lo expresamente pactado, si que á todas las consecuencias,
que según la naturaleza sean conformes á la buena fe, al uso
y á la ley; pues para que no exista, es necesario falten
el consentimiento de los contratantes, el objeto cierto que
sea materia del contrato, y la causa de la obligación que
se establezca, requisitos todos que mediaron en el celebrado
por Valle con Valdés en seis de Octubre de. mil ochocientos
noventa y ocho, y por tanto no cabe negar á éste el derecho
que le asiste, y en la demanda ejercita contra Valle, puesto
que las servidumbres se establecen por la ley, ó la voluntad
de los propietarios, y la falta de título constitutivo de las
mismas se puede suplir por la escritura de reconocimiento
del dueño del predio sirviente, ó por una sentencia, por
la poderosa razón de que todo propietario de una finca puede
establecer en ella las servidumbres que tenga por con-
veniente, artículos 536, 540 y 594 del Código Civil en conso-
nancia con los 1,088, 1,091, 1,254, 1,258 y 1,261 .del mismo
Código.—Considerando: Que estas prescripçiones y la del ar-
tículo 690 de dicho Código, convencen, cualesquiera que sean
las imperfecciones que el documento otorgado por Valle
y por Valdés pueda contener, que ellas no impiden al
último usar del derecho que en él se le reconoció, pues obli-
gado Valle á no menoscabar ese derecho que concediera,
debe subsanar todas esas imperfecciones del título, como
el demandante solicita, para utilizar y salvar el del contrato
nacido, tanto más cuanto que Valle ofreció presentar cuando
fuera necesario y Valdés se lo exigiese, la escritura de
su predio rústico que dejó olvidada en su casa, lo que
no ha cumplido.—Considerando : Que el dolo y el error no

se presumen nunca, y al sentar la Sala sentenciadora que cabe presumirlo, desvirtúa la definición del artículo 1269 del Código Civil y la doctrina legal de que nadie puede ir contra sus propios actos, toda vez que no hizo constar Valle que la concesión á Valdés la hacía, por haberle hecho comprender era de acuerdo con Noble y González á quienes se le había concedido con anterioridad, pretexto inadmisible, pues no habiendo ejercitado su acción tan pronto como supone se convenció de ello, siquiera para revestir de formalidad y aspecto legal ese medio por él escogido para excepcionarse, no es dable por tales razones apreciarlo como dolo causante y error esencial del contrato, dadas las terminantes prescripciones de los artículos 1,266 y 1,270 del Código Civil.—Considerando: Que siendo el objeto de los contratos, según se dispone en los artículos 1,271 á 1,273 del Código Civil, toda prestación lícita posible, y determinada que consista en no hacer ó permitir que otro haga, no se puede sentar sea nulo el contrato celebrado por Valdés con Valle, existiendo como existe allí el objeto cierto y determinado que es materia del contrato; y porque constituyéndose la servidumbre por virtud del acto en que conste la voluntad de una persona, esto es del dueño del predio sirviente, la ley no exige precio, demostrándolo las palabras "y en el modo y forma que bien le pareciere", del artículo 594 del Código Civil, y el modo de adquirir la propiedad y los derechos reales consignados en el 609, reproduciendo lo dispuesto en la Ley 14, título 31, Partida 3ª—Considerando que si bien con arreglo al número 7º del artículo 1,690 de la Ley de Enjuiciamiento Civil, no podía este Tribunal entrar en la apreciación de las pruebas, sino cuando en esa apreciación existía error de derecho ó error de hecho, si este último resultaba de documentos ó autos auténticos que demostrasen la equivocación evidente del juzgador; hoy, con arreglo á la Orden General número 118, artículo 79, procede el recurso en ese concepto, por error en la apreciación de toda clase de pruebas; y no

habiéndose apreciado todas en conjunto, por no haberse consignado el extracto de la testifical, para apreciarla según las reglas de la sana crítica, ni sentado en forma la ineficacia ó el valor de los documentos presentados en el juicio, es procedente el recurso en ese sentido por haber roto el Tribunal sentenciador la cohesión y fuerza que naturalmente se prestan unas y otras dando valor decisivo á su declaración respecto al documento de seis de Octubre del noventa y ocho, para absolver á los demandados, declaración que queda desvirtuada y por tanto ineficaz, por los razonamientos anteriormente consignados.—Considerando: Que los documentos privados números 1, 2 y 3, presentados por Noble al contestar la demanda, sólo pueden tener el valor que les concede el artículo 1,225 del Código Civil, ó sea entre los que los han suscrito y sus causahabientes, por no reunir los dos primeros el requisito del artículo 1,227, y por que en el del número 3, que es de cinco de Noviembre del noventa y ocho, el Notario sólo da fe de haber visto y presenciado poner todas las firmas en él suscritas, á que es de agregarse que siendo las manifestaciones que ese documento contiene, del demandado Valle y de Dionisio Morales, ni el uno ni el otro por sí sólo puede destruir el conjunto de las demás pruebas, ni quitar validez y eficacia al otro documento de seis de Octubre de mil ochocientos noventa y ocho, ya por no ser aplicable á éste el artículo 1,223 del repetido Código, que se refiere á los artículos 20 al 28 de la Ley del Notariado, y los 48 al 51 y 60 al 68 del Reglamento para su ejecución, en cuyos casos no se encuentra el documento; ya porque aún concediendo lo contrario, vendría á caerse en la prescripción del 1,227, haciendo fe la fecha del documento Valdés contra terceros, desde el mismo día en que fué inscrito en el Registro y entregado á funcionarios públicos, lo que le da mayor valor que á los de Noble, no revestidos de ese requisito. — Considerando: Que el artículo 523 de la Ley de Enjuiciamiento Civil, no exige la determinación concreta de la acción

que se ejercita, siendo suficiente deducirla de la relación de los hechos, fundamentos de derecho, y súplica de la demanda, según doctrina constante del Tribunal Supremo, desde la promulgación de dicha Ley procesal; y sentado por el demandante que Valle impuso sobre su finca una servidumbre á su favor, tiene que hacer las diligencias necesarias para que se inscriba; y dirigiendo además la demanda contra Noble, fundado en que al adquirir la finca la adquirió con el gravamen, por saber que lo tenía, y que los derechos reales se trasmiten con la cosa; de ello y de la petición del actor se deduce que la acción ejercitada envuelve para los demandados el reconocimiento de la servidumbre, y la obligación de presentar en el Registro las escrituras de propiedad del terreno gravado con aquélla, otorgando la necesaria para subsanar los defectos que impiden inscribir ese derecho real, no necesitando Valdés pedir la nulidad, ni la resción de la escritura otorgada por Valle á Noble de aquel terreno, por fundarse en un derecho reconocido y pre-existente al del título que ostenta el demandado Noble, en cuya virtud puede ser éste válido y subsistente pero sujeto á dicha carga y servidumbre, y además por la jurisdicción constante del Tribunal Supremo de ser inaplicable el principio de que no pueda establecerse acción contra el poseedor que tiene título más ó menos firme inscrito en el Registro de la Propiedad, sin que preceda otra acción que conforme á derecho sea adecuada para destruirlo, cuando la entablada no tiene otro objeto que perseguir el inmueble que el demandante reclama; pero no en el concepto de que el título del demandado sea más ó menos eficaz.—Considerando: Que para calificar de terceros, según la Ley Hipotecaria, hay que atenerse á las frases de la exposición de motivos de la primitiva Ley, explicando las razones que movieron á la Comisión á separar las relaciones entre las partes, de las relaciones con otras personas, dejando subsistentes aquéllas con arreglo al derecho civil, independientemente de toda inscripción, y sujetando á las prescripciones de la Ley Hipo-

tecaria las otras relaciones, que afectan ó puedan interesar á distintas personas.—Considerando : Que estas distintas per sonas que pueden reputarse en general como terceros respecto de cada acto ó contrato, son por la Ley Hipotecaria separadas en dos grupos, terceros para los efectos del derecho civil, y terceros para los de dicha Ley Hipotecaria ; es decir, que si no existe título alguno inscrito, rige el derecho civil, nacen ó no los derechos reales con independencia de la inscripción, perjudicándose ó no á los terceros, sin que en ello se mezcle la Ley Hipotecaria, que sólo rige desde que existe acto ó contrato inscrito, determinando los terceros para los efectos de dicha Ley y la inscripción, la preferencia y adquisición de derechos en su perjuicio ; pero si es sabedor de las cargas que sobre la finca pesan y se le prueba pierden ese privilegio.—Considerando : Que las mismas palabras de la Ley en su artículo 27, al decir que "para los efectos de esta Ley se considera como tercero á aquél que no haya intervenido en el acto ó contrato inscrito", demuestran y convencen la doctrina expuesta, corroborándola las de los artículos de la Ley Hipotecaria, 23, 34, 36, 38 y 69 y el 606 del Código Civil, que no es más que la traslación del 23 de aquélla, y que por el título y libro en que se halla colocado no es posible dar mayor extensión al concepto de tercero, tanto más cuanto el Código Civil sienta que si una misma finca se hubiese vendido á diferentes compradores, la propiedad del inmueble se transferirá al adquirente que antes la haya inscrito en el Registro, y cuando no haya inscripción pertenecerá la propiedad á quien de buena fe sea primero en la posesión, y faltando ésta á quien presenta título de fecha más antigua, siempre que haya buena fe.— Considerando : Que siendo el contrato de compra–venta otorgado por Valle á Noble de nueve de Noviembre de mil ochocientos noventa y ocho, estando los demandados conformes por deducirse de sus escritos en la finca vendida sobre la que Valdés dirige su demanda, sabedor Noble con anterioridad á dicha compra–venta del documento otor-

gado por Valle á Valdés por acompañar con su escrito de contestación el documento privado número 3 de cinco de dicho Noviembre, en el que Valle expresa la autorización y concesión á Valdés objeto de este pleito, habiendo reconocido el del cuatro del mencionado mes por Valdés presentado, confesando en él dicha concesión y la prioridad, todo lo que unido al anuncio en la *Gaceta* de quince de Octubre de mil ochocientos noventa y ocho, solicitando el demandante el aprovechamiento de aguas del río de la "Plata" y sitio del "Salto," que la Secretaría de Fomento publicó para que en el término de treinta días puedan reclamar contra dicha petición todos los que con ella se creyeran perjudicados; y la manifestación del hecho 8? de su contestación sentando que fundado Valdés en la promesa que le hiciera Valle fué que solicitó dicha concesión; y el testimonio del Notario Valldejuly de haber procedido á otorgar la escritura de venta de Valle á Noble, que quedó sin firmar ni autorizar por haber consignado en ella la concesión de Valle á Valdés de servidumbre en seis de Octubre de mil ochocientos noventa y ocho, convencen y demuestran era sabedor de la carga que sobre el terreno por él comprado pesaba, teniendo por tanto conocimiento al adquirir la finca ó con anterioridad, de esa carga, y por esa circunstancia no puede tener el carácter de tercero, esté ó no inscrita la finca, por ser doctrina constante en varias sentencias del Tribunal Supremo, entre otras las de catorce de Noviembre de mil ochocientos noventa y uno, once de Enero de mil ochocientos noventa y cinco, siete de Febrero y cuatro de Junio de mil ochocientos noventa y seis, de acuerdo con los principios de derecho, según los cuales no cabe impugnar aquello que se aceptó sin protesta ó que expresa ó tácitamente se consintió.—Considerando: Que la sentencia recurrida infringe los artículos citados en esta sentencia, y los 16, 1,098, 1,218, 1,223 del Código Civil, el 66 de la Ley Hipotecaria, las doctrinas legales, 1ª, 4ª y 5ª del recurso, procediendo por ello declararlo con lugar sin especial condena de

costas.—Fallamos: Que debemos declarar y declaramos haber lugar al recurso de casación interpuesto por Don Ramón Valdés Cobián, y en su consecuencia casamos y anulamos la sentencia que en cuatro de Agosto último dictó la Sección 2ª de la Corte Suprema de Justicia sin especial condena de costas de este recurso; y con ésta y con la que á continuación se dicta, devuélvanse los autos del Juzgado y el rollo de la expresáda Sección 2ª al Tribunal del Distrito de San Juan á los efectos procedentes. Así por esta nuestra sentencia, que se publicará en la *Gaceta Oficial* lo pronunciamos, mandamos y firmamos.

José S. Quiñones.—El Jùez Asociado Don José C. Hernández votó por escrito, José S. Quiñones.—Juan Morera Martínez.—Francisco de P. Acuña.—Herminio Díaz.

Publicación.—Leída y publicada fué la anterior sentencia por el Sr. Juez Asociado del Tribunal Supremo Don Juan Morera Martínez, Ponente en este recurso, celebrando audiencia pública dicho Tribunal en el día de hoy, de que certifico como Secretario, en Puerto Rico á treinta de Diciembre de mil ochocientos noventa y nueve.—E. de J. López Gaztambide.